**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

JANICE FONTELL,            *

                              *

    Plaintiff,           *

                              *

        v.               *        Civil Action No. AW-10-1472

                              *

TODD HASSETT, *et al.*,     *

                              *

    Defendants.        *

                              *

                              *

                              *

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Memorandum Opinion**

Presently ripe and ready for resolution in this matter are: (1) Plaintiff's Motion to Alter or Amend the Court's April 20, 2012 Judgment granting Defendants' Motion for Summary Judgment, denying Plaintiff's motions for partial summary judgment, and dismissing this case, Doc. No. 97; (2) Defendant Todd Hassett's Motion to Strike Plaintiff's letter to the Court accusing him of committing perjury, Doc. No. 100; (3) Defendants' Motion for Attorneys' Fees and Costs, Doc. No. 108; and (4) Plaintiff's Motion to Strike Defendants' Motion, Doc. No. 110. The Court has reviewed the motion papers and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2010). For the reasons articulated more fully below, the Court GRANTS Defendant Hassett's Motion to Strike, DENIES without prejudice Defendants' Motion for Attorneys' Fees, DENIES Plaintiff's Motion to Strike, and GRANTS-in-part and DENIES-in-part Plaintiff's Motion to Alter or Amend. The Court will REOPEN this case for further proceedings with respect to damages.

I.      **Factual and Procedural Background**

This multi-year, multi-litigation action arises from actions taken by Defendants to collect a $236.71 condominium fee assessed against Plaintiff.  Based on a belief that the fee was improper, Plaintiff steadfastly refused to pay it, and the homeowner association ultimately took action through its attorneys and management agent to collect the fee.  Plaintiff owns property located at 18502 Stakeburg Place, Olney, Maryland, and is a member of Defendant Norbeck Grove Community Association, Inc. ("Norbeck Grove" or "the homeowner association").  Doc. No. 83 Ex. 8 at 2.  Norbeck Grove and The Management Group Associates, Inc. ("TMG" or "the management agent") have a management agreement whereby TMG manages various aspects of the homeowner association, including enforcing debts and collection policies.  Doc. No. 83 Ex. 10 at 2–4.  Defendant Jeff Gatling ("Gatling") is the president of TMG, and Defendant Todd Hassett ("Hassett") is an employee.  *See* Doc. No 83 Ex. 9 at 2; Doc. No. 82 Ex. 11 at 13–14.

During the period in question, the homeowner association and its management agent were responsible for collecting dues directly from Plaintiff's condominium association, Norbeck Grove 1 Condominium, Inc. ("condominium association").  On December 15, 2003, the homeowner association and management agent discovered that they had failed to invoice the correct amounts on monthly bills to Plaintiff's condominium association.  *See* Doc No. 2 Ex. 1 at 1.  As a result of this billing error, there was a shortfall totaling $8,521.50 in homeowner association dues owed by the condominium association.  *See* Doc No. 2 Ex. 1 at 1.  On January 23, 2006, the homeowner association and management agent divided the total shortfall by 36, the total number of condominium members, and the management agent began to collect a one-time charge totaling $236.71 from each condominium member.  *See* Doc. No. 85 Ex. 15 at 1.  Plaintiff had paid her monthly and quarterly homeowner association dues in a timely manner until this

collection action, Doc. No. 83 Ex. 8 at 9, but Plaintiff contested this assessment and refused to pay it.[1]

On January 23, 2006, Defendants billed Plaintiff for $236.71 pursuant to the 2003 shortfall. Plaintiff steadfastly refused to pay the assessment, and Defendants charged her a $10 late fee on April 6, 2006. *See* Doc. No. 84 Ex. 5 at 1. Over the next two and a half years, Defendants charged Plaintiff additional late fees, placed a lien of $751.91 on her home, and notified her of impending foreclosure. Doc. No. 86 Ex. 1 at 1–4; Doc. No. 84 Ex. 8; Doc No. 84 Ex. 9.

When Defendants' continued efforts proved unsuccessful, the homeowner association referred the collection action to its attorneys, the Andrews Law Group, who is not a party to this action. On September 19, 2008, the homeowner association sued Plaintiff in Montgomery County, Maryland District Court through its attorneys to collect the assessment as well as late fees, costs of collection, attorneys' fees, and court costs. *See* Doc. No. 2 Ex. 21. The district court granted judgment to the homeowner association, and Plaintiff appealed to the Montgomery County Circuit Court. Doc. No. 94 Ex. 2 at 5.

In the meantime, on February 23, 2010, Andrews Law Group recorded a lien of $3,963.19 on Plaintiff's residence. Doc. No. 88 Ex. 4 at 7. On June 23, 2010, Andrews Law Group recorded a lien against Plaintiff individually for $1,330.71. *See* Doc. No. 83 Ex. 8 at 23. Around this time, Defendant Hassett left a voicemail on Plaintiff's home phone about the liens on her property that Plaintiff's friend later overheard. Doc. No. 92 Ex. 15 at 2.

---

[1]In her motion to alter or amend, Plaintiff states that she refused to pay the $236.71 assessment because the condominium association had already paid the $8,521.50 shortfall in full, and thus Defendants were trying to collect twice on the debt. The Court notes that it will not be making a determination as to the validity of the underlying debt, as this issue was not properly presented as a basis of Plaintiff's claims in either her Second Amended Complaint or her motions for partial summary judgment. Rather, Plaintiffs claims involve the methods utilized by Defendants to collect the alleged debt.

On October 20, 2010, the Circuit Court for Montgomery County, Maryland reversed the district court and dismissed the homeowner association's complaint, finding the collection action barred by Maryland's three-year statute of limitations.  *See* Doc. No 94 Ex. 2 at 5.

On June 7, 2010, Plaintiff filed the present action against Defendants in this Court. Plaintiff's Second Amended Complaint alleges 28 counts against Defendants for violations of the federal Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), the Maryland Contract Lien Act ("MCLA"), the Maryland Collection Agency Licensing Act ("MCALA"), and the Maryland Consumer Protection Act ("MCPA") for their conduct in attempting to collect her homeowner's assessment.  Second Am. Compl. ¶¶ 44–104. Plaintiff also alleges that the homeowner association is vicariously liable for the actions of its attorneys, its management agent, and the employees of the management agent.  Second Am. Compl. ¶¶ 107–110.

After nearly two years of litigation, on April 20, 2012, the Court granted Defendants' motion for summary judgment, denied Plaintiff's motions for summary judgment, and dismissed all of Plaintiff's 28 claims against Defendants.  Subsequently, Plaintiff filed a Motion to Alter or Amend the Court's Judgment and has apparently initiated a lawsuit in state court against Defendant Hassett for perjury.  Additionally, Plaintiff submitted a letter to the Court accusing Defendant Hassett of committing perjury during the course of this litigation.  Hassett moved to strike Plaintiff's letter, denying the perjury and contending that Plaintiff's letter is immaterial to the issues in this case.  Defendants then filed a Motion for Attorneys' Fees and Costs, which Plaintiff has moved to strike.

## II.     **Standard of Review**

Plaintiff seeks reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure. "While the Rule itself provides no standard for when a district court may grant such a motion, courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Plaintiff's motion is based on the third rationale for reconsideration: manifest error. To justify reconsideration on the basis of manifest error, the prior decision cannot be "'just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, Nos. 92-2355, 92-2437, 1995 WL 520978 at *5 n.6 (4th Cir. Sept. 5, 1995)).

## III.   Analysis

On April 20, 2012, this Court granted summary judgment in favor of Defendants, dismissing Plaintiff's claims in toto.  *See* Doc. No. 96.  Plaintiff asks the Court to reconsider its determinations that: (1) Defendants do not qualify as debt collectors under the Fair Debt Collection Practices Act ("FDCPA"); (2) Plaintiff's FDCPA claims are time-barred; (3) Plaintiff failed to show that Defendants disclosed information about her reputation to third parties that had no legitimate business need for such information in violation of the Maryland Consumer Debt Collection Act ("MCDCA"); (3) Plaintiff failed to show that Defendants had sufficient knowledge that their claims against her were time-barred to support liability under the MCDCA; (4) the Maryland Collection Agency Licensing Act ("MCALA") does not apply to the management agent or its employees because the management agent's principal business is not that of debt collection; (5) Plaintiff is not entitled to relief under the Maryland Consumer

Protection Act ("MCPA"); and (6) the homeowner association is not vicariously liable for the actions of its attorneys.  The Court agrees with Plaintiff that it should reconsider its analysis of Plaintiff's MCALA claim but maintains the correctness of its prior holdings on all other issues. The Court will more thoroughly discuss and explain its prior holdings on those other matters only as needed.

A.    FDCPA Claims

In order for Defendants to be liable for FDCPA violations, they must qualify as "debt collectors" under the FDCPA.  Plaintiff has not contested the Court's determination that the homeowner association, in collecting debts owed to itself rather than debts owed to another, cannot be considered a debt collector under 15 U.S.C. § 1692a(6).  *See Betskoff v. Enterprise Rent A Car Co. of Baltimore, LLC*, Civ. No. ELH–11–2333, 2012 WL 32573, at *5 (D.N.J. Jan. 4, 2012).  Rather, Plaintiff contests the Court's determination that the management agent and its employees are not debt collectors under the FDCPA.

1.    Whether Defendant TMG and its Employees Qualify as "Debt Collectors"

The FDCPA provides that "[t]he term 'debt collector' … does not include … any person collecting or attempting to collect any debt … asserted to be owed or due another to the extent such activity … concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii).  It follows that the management agent and its employees are to be considered "debt collectors" only if they began their attempts to collect the debt after Plaintiff had gone into default.

Throughout this action, Plaintiff has been unclear about exactly when the management agent began billing her for the $236.71 assessment.  Her Second Amended Complaint does not

provide an exact date, *see* Doc. No. 69 ¶¶ 12–13, but the evidence suggests that the management

agent began officially billing Plaintiff for the debt on or around February 1, 2006.  *See* Doc. No.

1 Ex. 4 (e-mails suggesting the management agent may have tried to collect unofficially from

Plaintiff in 2005); *see also* Doc. No. 84 Ex. 5 at 1 (the management agent's accounting statement

for February 2006 reflecting an assessment against Plaintiff for $236.71); Doc. No. 85 Ex. 15

(letter from the management agent dated January 23, 2006 informing condo owners of

forthcoming fee assessment of $236.71).

> Regardless of what date the management agent began its collection action, it is

undisputed that the management agent was involved in the collection action from the start,

before Plaintiff's initial refusal and eventual default on the obligation.  Defendants have

established that the management agent enforces the homeowner association's collection policies

pursuant to contract.  Doc. No. 83 Ex. 10 at 2–4.  Because the management agent was involved

in collecting the $236.71 fee from Plaintiff from the outset and was not assigned the collection

action after Plaintiff went into default, the management agent and its employees cannot be

considered "debt collectors" subject to FDCPA liability.

> Plaintiff argues that her debt to the homeowner association was somehow in "pre-existing

default" before Plaintiff even became aware of it.  In support of this argument, Plaintiff has

provided a supplement to her Motion to Amend replete with arguments never previously

articulated before the Court and evidence of which the Court has not previously been made

aware.[2]  Although this evidence is new, it does not qualify as newly discovered since Plaintiff

---

[2]For example, Plaintiff's supplement to her Motion to Amend provides evidence that as far back as May 17, 2005,
Defendants … mailed a collection letter and communication to Plaintiff and the other 35
condominium owners for the sole and primary purpose to collect alleged unpaid and defaulted
homeowner association assessments and dues owed from January – December 2003 related to the
2003 billing error.  In the collection letter, Defendant Hassett threatened to file liens against the
individual lots belonging to the 36 condominium owners.

has been aware of it since the initiation of the litigation and has failed to articulate any reason for her failure to raise it earlier despite every opportunity to do so.  A motion to amend is not a license to present new arguments or legal theories that could have been raised prior to judgment. *Pac. Ins. Co. v. Amer. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).  As a result, the Court declines to consider Plaintiff's "pre-existing default" argument or the evidence newly proffered in support of that argument.

### 2.   Limitations Period for FDCPA Claims

Additionally, even if the management agent or its employees could be considered debt collectors under the FDCPA, Plaintiff has failed to show actions by these defendants, other than certain third-party communications made by Defendant Hassett on behalf of the management agent, that occurred within the one-year limitations period prior to her initiation of this suit on June 7, 2010.  *See* 15 U.S.C. § 1692k(d).   As an initial matter, the Court notes that there is little doubt the collection action against Plaintiff occurred well into 2010.  However, it appears that the homeowner association's attorneys took over much (though not all, as discussed *infra*,) of the collection action from late-2008 through 2010.

Plaintiff argues that the management agent and its employees made continued attempts to collect on her alleged debt even after Andrews Law Group took over the collection action.  First, Plaintiff argues that although the lien on her property was filed by Defendant Gatling on June 23, 2008, more than a year before initiation of the instant action, the lien constituted a "continuing violation" of the FDCPA.  Thus, Plaintiff argues, the limitations period began to accrue when the

---

Doc. No. 107.  In Plaintiff's Second Amended Complaint, she did not allege that any collection activities happened prior to August 16, 2007, more than two years after it now appears the first collection letter was sent.  *See* Doc. No. 69 ¶ 13. Although the Court gathered from Plaintiff's evidence put forth during summary judgment that the collection action began as early as February 2006, the Court was completely unaware that lien threats were made to Plaintiff as early as 2005.  The Court has struggled greatly with this case due in large part to the lack of clarity with which the facts have been presented.

lien was removed in late 2010, rather than when it was filed in 2008.  Plaintiff has not cited any cases that support this theory, however, and the Court has been unable to find any.  Rather, in determining when the limitations period begins, the majority of courts look to the date at which the defendant engaged in the allegedly abusive action (such as the date a defendant mails a debt communication letter) rather than any subsequent date at which the plaintiff may have felt the harm.  *See Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 500–01 (D. Md. 2004); *see also Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995); *Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992).  Accordingly, it makes sense that the limitations period would begin at the time the lien was placed on Plaintiff's property, since this was the definitive action taken by Defendants that is alleged to constitute an abusive debt collection practice.

Additionally, Plaintiff alleges that Defendants continued to send her collection letters even after Andrews Law Group took over the collection action.  At least one district court has held that the limitations period for FDCPA claims begins from the date of the first violation, and subsequent violations of the same type do not restart the limitations period.  *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009).  Even if the management agent and its employees continued to send Plaintiff collection notices within the limitations period, Plaintiff had begun receiving such notices since 2006, yet did not bring a claim until more than four years later.  Although each notice was undoubtedly unique in that Plaintiff's initial assessment continued to accrue late fees, the notices all related to collection of the same underlying debt. As a result, the Court finds that the limitations period began accruing in 2006 for claims based on the collection notices and in 2008 for claims relating to the lien, meaning that claims based on either are time-barred under the FDCPA.

This leaves the matter of a certain third party communication allegedly made by Defendant Hassett on behalf of its employer, the management agent, on May 3, 2010 over Plaintiff's voicemail.[3]  Plaintiff claims that Hassett's voicemail message, which she subsequently played for a friend, constitutes an impermissible communication with third parties in violation of § 1692c(b) of the FDCPA. While the Court notes that this claim comes within the limitations period, it fails to state a claim under § 1692c(b) of the FDCPA  because Hassett could not be said to have communicated information about the debt to Plaintiff's friend where Plaintiff is the one who later played the voicemail message for the third party.  Accordingly, the Court affirms its prior opinion dismissing Plaintiff's FDCPA claims.

B.    MCDCA Claims

Plaintiff asks the Court to reconsider its dismissal of her MCDCA claims on several grounds.  First, Plaintiff makes what appears to the Court to be a new argument directly challenging the validity of her underlying debt under the MCDCA.  Plaintiff argues that Defendants' collection activities violated § 14–202(8) of the MCDCA because the billing error charged to Plaintiff had already been paid in full by the condominium association, and thus the assessment against Plaintiff was never valid in the first place.  *See* Doc. No. 91 at 10-16.  The MCDCA, codified at Md.Code Ann., Com. Law II §§ 14-201–14-204, provides in relevant part that "[i]n collecting or attempting to collect an alleged debt a collector may not … [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]  § 14–202(8).

---

[3]Plaintiff alleges violations of the MCDCA based on other third party communications occurring at homeowners meetings, but her FDCPA claim based on third party communications appears to be premised solely on Defendant's voicemail communication.  *See* Doc. No. 69 at ¶¶ 44–45.

As an initial matter, this argument was was not raised as a basis for Plaintiff's MCDCA claims in either her Second Amended Complaint, *see* Doc. No. 69 ¶¶ 74–82, or her two motions for summary judgment, *see* Doc. No. 84 at 7–13; Doc. No. 85 at 5–9. While Plaintiff mentioned in the statement-of-facts section of her motions for summary judgment that she "refused to pay the $236.71 one-time charge because the condominium association had paid the 2003 billing error in full via check," *see* Doc. No. 84 at 3; Doc. No. 85 at 3, the Court considered this to be an explanation for Plaintiff's actions rather than a portion of Plaintiff's MCDCA claim. The Court engaged in a thorough review of the record to determine whether this argument had been raised by Plaintiff before and found that it had been raised in Plaintiff's Complaint and First Amended Complaint. Unfortunately, Plaintiff's Second Amended Complaint supersedes her prior complaints and effectively nullifies them. *See, e.g.*, *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956). Plaintiff may not use her Motion to Amend to raise new arguments or legal theories that could have been raised prior to judgment. *Pac. Ins. Co.*, 148 F.3d at 403.

Even assuming that Plaintiff adequately raised a claim under§ 14–202(8) of the MCDCA challenging the validity of the underlying debt, such a claim is not viable. The MCDCA, and in particular § 14–202, is meant to proscribe certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself. The Act proscribes certain *conduct*, (1) through (9), by a collector in "collecting or attempting to collect an *alleged debt*…" Md.Code Ann., Com. Law § 14–202 (emphasis added). In other words, the Act focuses on the conduct of the debt collector in attempting to collect on the debt, whether or not the debt itself is valid. Plaintiff contends that she is entitled to relief under paragraph (8) of the provision based on Defendants' knowledge that the underlying debt did not exist. Paragraph (8) provides that a collector, in attempting to collect an alleged debt, may not "[c]laim, attempt, or threaten to

enforce a right with knowledge that the right does not exist." *Id.* § 14–202(8).  Section § 14–202(8) only makes grammatical sense if the underlying debt, expressly defined to include an alleged debt, is assumed to exist, and the specific prohibitions are interpreted as proscribing certain *methods* of debt collection rather than the debt itself.

This interpretation is strengthened when considering that the other eight practices proscribed by the statute refer to specific coercive or abusive methods of enforcing a debt. Examples include using obscene or grossly abusive language in communicating with the debtor or a relative, § 14–202(7), using or threatening to use force or violence, § 14–202(1), or otherwise communicating with the debtor in a harassing or abusive manner, § 14–202(6). Section 14–202(8) makes sense within the context of the other proscribed practices only if it is also read to proscribe certain methods of debt collection, "such as enforcing a right collateral to the debt in order to pressure the debtor to pay the debt," rather than collection of the debt itself. *See Porter v. Hill*, 838 P.2d 45, 48–49 (Or. 1992) (analyzing a similar statute).  Accordingly, because the MCDCA provides no basis for liability in contesting the underlying debt, Plaintiff's argument must fail.

1.    MCDCA Claim based on Third Party Disclosures

Additionally, Plaintiff asks the Court to reconsider its finding that Defendants did not disclose information to third parties that affected Plaintiff's reputation with knowledge that the third parties had no legitimate business need for that information.  *See* Md. Code Ann., Com. Law § 14–202(5).  Section 14–202(5) of the MCDCA provides that

> [i]n collecting or attempting to collect an alleged debt a collector may not … disclose or threaten to disclose to a person … information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information[.]"

12

*Id.* Specifically, Plaintiff contends that Defendants discussed their lawsuit against Plaintiff at two different board meetings in 2010 and that the minutes from those meetings were subsequently made available online.

Unfortunately, Plaintiff has been unable to provide the Court with any evidence as to what was said during those meetings, since she was not present at either. *See* Doc. No. 83 Ex. 8 at 92–94 (deposition statement by Plaintiff stating that she was not present at the May 13, 2010 meeting and has no personal knowledge about the extent of the disclosures made during that meeting); *see also* Doc. No. 33 Ex. 6 at 1 (minutes of October 14, 2010 meeting reflecting that Plaintiff was not one of the homeowners present). The minutes of the May 13, 2010 meeting offer some clues as to what was said, providing in pertinent part:

> <u>Fontell Lawsuit</u> – Todd Hassett provided the Board with an update relating to the lawsuit against Janice Fontell. The trial is set for May 27, 2010. Mr. Hassett will keep the Board abreast of any future developments.

*See* Doc. No. 33 Ex. 5 at 6. The minutes from a subsequent board meeting reveal that the board was given an update on the status of Plaintiff's appeal.

Given the lack of evidence before the Court as to what exactly was said during the board meetings, there is not enough here upon which to find Defendants liable under § 14–202(5). It appears Defendant Hassett merely updated board members and possibly a few homeowners about the procedural status of the lawsuit against Plaintiff. The lawsuit was a matter of public record at the time of the disclosures, and moreover the board of directors and association members had a legitimate business interest in the basic facts involving the association's lawsuit. Plaintiff argues that the third parties had no legitimate business need for the information because Defendants had no legal right to pursue any collection actions against her in the first place. In fact, the homeowners and board members would have a greater business need for information

involving the lawsuit if it was frivolous, since the suit was presumably funded, at least in part, by homeowner association fees.

Moreover, Plaintiff should have been aware that her lawsuit could have been discussed at an open board meeting since, as a member of the condominium association and former president of the board of directors, she was aware of the association's bylaws.  The bylaws provide that all association meetings will be open to homeowners and that meetings may be closed only for several enumerated reasons, including "[p]rotection of the privacy or reputation of individuals in matters not related to Association business[.]"  Doc. No. 83 Ex. 3 at 8.  Because the association's lawsuit against Plaintiff was directly related to association business, the board members were bound by the bylaws to hold any discussion about the lawsuit during an open, as opposed to a closed, board meeting.  For these reasons, the Court declines to reconsider its dismissal of this MCDCA claim.

> 2.   <u>Whether Defendants' Failure to Realize that its Claims against Plaintiff were Time-Barred Constitutes a Mistake of Law</u>

In its April 20, 2012 opinion, the Court found that Defendants are not liable under the MCDCA for asserting time-barred claims against Plaintiff in state court because Plaintiff did not sufficiently show that Defendants had pursued these claims with knowledge that they were time-barred.  The "knowledge" requirement of the MCDCA has been interpreted as imposing liability against a defendant only where the plaintiff can show that the defendant "attempt[ed] to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right.'"  *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 732 (D. Md. 2011) (citing *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004)).  Plaintiff contends that the Court must reconsider its holding on this issue because the "knowledge" requirement of the MCDCA does not immunize Defendants for mistakes of law.

14

As an initial matter, the Court notes that this claim by Plaintiff is based upon the circuit court's decision that Defendants' claims were time-barred, and as such, it would be helpful if the Court had been provided with court documents from the state court litigation.  The extent of the Court's knowledge about the state court cases and crucial dates for statute of limitations purposes is as follows: A billing error was discovered in December 2003, for which the homeowner association began billing condominium owners in early 2006.  Plaintiff refused to pay the assessment, and Defendants began charging her late fees shortly thereafter.  On September 19, 2008, the homeowner association filed a small claims lawsuit against Plaintiff to collect the assessment and late fees.  Defendants prevailed and Plaintiff appealed.  In December 2010, the Circuit Court of Montgomery County reversed the district court, finding that Defendants' debt collection action was time-barred.

These facts alone are insufficient to establish that Defendants should have known their claims were time-barred from the time they initiated suit. Without knowing more about the rationale behind the circuit court's decision, it is not clear that Defendants had no meritorious basis for believing their claims were timely.  The fact that the district court ruled in Defendants' favor suggests that such a meritorious basis does exist.  In sum, it appears there was genuine uncertainty prior to the circuit court's decision as to when the limitations period began running on Defendants' claims.

If this Court were to find that Defendants' ignorance about the limitations period was a mistake of law, their professed lack of knowledge would not save them from liability under the MCDCA.  *Spencer v. Henderson–Webb, Inc.*, 81 F. Supp. 2d 582, 594 (D. Md. 1999) ("the term 'knowledge' in the [MCDCA] does not immunize debt collectors from liability for mistakes of law.").  In other words, Defendants don't escape liability under the MCDCA merely because

they didn't bother to make themselves aware of an obvious limitations period surrounding their claims.

Where the law's application to the facts is unclear, however, as appears to have been the case with the limitations period, and Defendants had a meritorious argument that the limitations period had not passed, it would be proper for Defendants to bring suit to resolve such issues. To argue that Defendants committed a mistake of law in bringing the collection action against Plaintiff, due to the fact that such action was subsequently found to be time-barred, would be to ignore the decision of the state district court implicitly affirming the timeliness of Defendants' action and to apply the circuit court's decision ex post facto. Because the proper limitations period was not initially clear, the Court finds that Defendants' failure adhere to the statute of limitations does not constitute a mistake of law. As such, Plaintiff is held to her burden of proving either actual knowledge or reckless disregard by Defendants, and as discussed in the Court's prior opinion, Plaintiff has produced no evidence of either. Accordingly, the Court affirms its decision that Defendants are not liable under the MCDCA for attempting to collect a time-barred debt.

C.    MCLA Claims

Plaintiff contests the Court's determination that Plaintiff does not have standing to bring a claim under the MCLA based on Defendants' action in recording a lien on her home. The MCLA lists specific procedures a party may take to contest a lien. *See* Real Prop. Art., § 14–203(c). Among other things, it provides that a party seeking to contest a lien must, within 30 days of receiving notice of the lien, "file a complaint in the circuit court for the county in which any part of the property is located to determine whether probable cause exists for the

establishment of a lien." *Id.* § 14–203(c)(1).  The Maryland Court of Appeals has held that the

procedural requirements of  § 14–203, including the requirement that the property owner file an

action in circuit court to contest the lien, do not violate procedural due process.  *Golden Sands*

*Club Condominium, Inc. v. Waller*, 545 A.2d 1332, 1337–38 (Md. 1988).

In this case, Plaintiff did not follow the procedures set forth by the MCLA for contesting

a lien.  Moreover, the liens recorded on Plaintiff's property were subsequently removed when

Plaintiff prevailed in the homeowner association's case against her.  The MCLA provides no

mechanism for relief for a Plaintiff whose liens have already been removed.  As a result, the

Court affirms its prior decision dismissing Plaintiff's MCLA claims.


D.      MCALA Claims

Plaintiff challenges the Court's determination that the management agent and its

employees did not violate the MCALA by operating as a collection agency without a license.

The MCALA requires that all persons doing business as a collection agency in Maryland have a

license.  Md.Code Ann., Bus. Reg. § 7-301(a).  A collection agency is defined, *inter alia*, as a

person who engages directly or indirectly in the business of:

> (1)(i) collecting for, or soliciting from another, a consumer claim; or
>
> > (ii) collecting a consumer claim the person owns, if the claim was in
> > default when the person acquired it …[.]

*Id.* § 7-101(c).

There is no question that the homeowner association was not acting as a collection

agency when it took action to collect fees on its own behalf and under its own name, prior to

Plaintiff's default.  It appears that much of the debt collection activity undertaken here, including

the lawsuit filed against Plaintiff, was initiated by the homeowner association and its attorneys.

17

The question, however, is whether the management agent, acting in conjunction with and on behalf of the homeowner's association, is considered to have been doing business as a collection agency when it began seeking to collect Plaintiff's debt in 2006.  It is not entirely obvious that the management agent was "collecting for … another" when it collected the homeowner association debts, considering the interconnected nature of the homeowner association with its management agent on all matters of managing community affairs.  Though it is a close call, this Court finds that as a matter of law, the management agent should be considered a third party under § 7-101(c)(1)(i) when collecting debts on behalf of the homeowner association, since the parties were merely bound by contract and are indisputably separate entities. Thus, the management agent's actions in sending collection notices and filing a lien on Plaintiff's property would constitute doing business as a collection agency under the MCALA.

Given this finding, the Court must determine whether the management agent and its employees fall under any exception or exemption from the MCALA requirement that those doing business as a collection agency obtain a license.  In its prior Memorandum Opinion, the Court held that "the MCALA does not apply to TMG or its employees" because "TMG's debt collection activities comprise only 5 percent of its total business activities."  Doc. No. 95 at 10. Plaintiff contends that the Court failed to consider that Defendants may be exempted from the MCALA only if they meet four enumerated requirements, only one of which was discussed by the Court.

The Court not only agrees with Plaintiff that it should have discussed all four prongs of the statutory exemption, *see* § 7–102(b)(10), but that it was manifest error not to do so.  The Court notes that its reconsideration of this issue was greatly assisted by the insightful *amicus* memorandum submitted by the Maryland State Collection Agency Licensing Board, which

18

administers and enforces the MCALA licensing scheme.  Under the four-pronged test for exemption from the licensing requirement, the management agent and its employees are not exempt from the MCALA unless: (1) the management agent and homeowner association are related by common ownership; (2) the management agent only collects debts for the homeowner association and others to which it is related by common ownership; (3) the management agent's principal business is not the collection of debts; and (4) before collecting the debt, the management agent filed with the Licensing Board its name, address and telephone number of a contact person, and the name of its resident agent.  *See* Md.Code Ann., Bus. Reg. § 7–102(b)(10).

While the homeowner association and its management agent have a close working relationship, they are linked by contract rather than common ownership. Moreover, there is no evidence that the management agent or any of its employees filed the appropriate information with the Licensing Board as required by statute.  Because no reasonable jury could find that Defendants met the requirements for exemption, the Court finds that Defendants violated the MCALA by failing to register with the Licensing Board prior to engaging in debt collection activities.

Despite the MCALA violation by the management agent and its employees, Plaintiff's claims under the MCALA (Counts XXII–XXIII) fail as pled and argued by Plaintiff because the MCALA does not give rise to a private right of action.  *See id.* § 7–401; *see also Bradshaw*, 765 F. Supp. at 727–28.  Violations of the MCALA may, however, support a cause of action under the FDCPA.  *See Bradshaw*, 765 F. Supp. at 729, 732 (holding as a matter of first impression that a violation of the MCALA may in some cases support a cause of action under the FDCPA).

In Plaintiff's Second Amended Complaint, ¶ 52, she states a claim under the FDCPA, § 1692e(5), based on Defendants' failure possess a license under the MCALA.  Section 1692e(5) proscribes a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  The management agent sent Plaintiff debt collection notices from at least 2006 to 2008 and filed a lien on Plaintiff's property without being properly licensed under the MCALA.  As discussed above, however, Defendants cannot be considered "debt collectors" under the FDCPA.  As a result, Plaintiff's FDCPA claim based on the MCALA fails.

In addition to finding that a violation of the MCALA may support a cause of action under the FDCPA, the Court in *Bradshaw* considered whether the defendant had violated the MCDCA for filing lawsuits without a license in violation of the MCALA.  Although Plaintiff has not made similar claims under the MCDCA in the instant action, she has sufficiently stated the facts essential to support such claims.  *See* Fed. R. Civ. P. 8; *see also Commonwealth of Penn Dep't of Envtl. Prot. v. Concept Scis., Inc.*, 232 F. Supp. 2d 454, 460 (E.D. Penn. 2002) ("it is not necessary that a plaintiff identify the specific legal theory underlying the complaint.") (citation omitted).

The MCDCA provides that a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction," Md.Code Ann., Com. Law § 14–201(b), may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."  *Id.* § 14–202(8).  The management agent and its employees must have known they were not licensed as debt collectors in Maryland when they sent Plaintiff multiple collection notices and placed a lien on her property, and any ignorance about the licensing requirement is a mistake of law that does not immunize Defendants from liability under the MCDCA.  *See Spencer*, 81 F. Supp. at

594–95 ("ignorance of the law will not excuse its violation.") (citation omitted); *see also*

*Bradshaw*, 765 F. Supp. at 732–33 (finding that a debt collector's ignorance of Maryland's

licensing laws constitutes a mistake of law that does not excuse liability under § 14–202(8) of

the MCDCA).  As such, judgment will be entered in favor of Plaintiff for violation of the

MCDCA by the management agent and its employees for operating as debt collectors without a

license.

Additionally, the Maryland Consumer Protection Act ("MCPA") prohibits "unfair or

deceptive trade practices," Md.Code Ann., Com. Law § 13–301, and expressly provides that

violations of the MCDCA constitute "unfair or deceptive trade practices." *Id.* § 13–301(14)(iii).

It follows that Defendants' violation of the MCDCA for attempting to collect debts without a

license constitutes an "unfair or deceptive trade practice" under the MCPA, and the management

agent and its employees must be found to have violated that statute as well.  *See Bradshaw*, 765

F. Supp. at 732–33.


E.     Damages

The MCDCA and MCPA provide for damages in the event liability is imposed.  The

MCDCA provides that "[a] collector who violates any provision of this subtitle is liable for

damages proximately caused by the violation, including damages for emotional distress or

mental anguish suffered with or without accompanying physical injury."  Md. Code Ann., Com.

Law § 14–203.  The MCPA provides that "any person may bring an action to recover for injury

or loss sustained by him as the result of a practice prohibited by this title."  *Id.* § 13–408(a).

Here, liability under the MCDCA and MCPA is predicated on the unlicensed attempts of

the management agent, through its employees Gatling and Hassett, to collect Plaintiff's debt by

sending collection notices and filing a lien on Plaintiff's property.  Plaintiff seeks a plethora of damages, most of which are not cognizable under these statues.  *See Bradshaw*, 765 F. Supp. at 733 ("declaratory and injunctive relief is not available under the … MCDCA, or the MCPA.") (citing *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 368–69 (D. Md. 2010)).  Plaintiff is limited to compensatory damages for any injury or loss causally related to Defendants' acts, including any mental anguish or emotional distress that Plaintiff can prove at trial.  The Court shall reopen this case for the purpose conducting further proceedings with respect to damages.

F.      Appointment of Counsel

There is generally no right to appointment of counsel in civil cases, *see Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated in part on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989), but the Court may, in its discretion, choose to appoint counsel under 28 U.S.C. § 1915(e).  At this stage in the proceedings, given the potential for a jury trial on the issue of damages, the Court strongly urges Plaintiff to retain counsel.  The Court previously denied Plaintiff's motion to appoint counsel on the grounds that she was performing a capable job of presenting her case.  Doc. No. 17.  Because Plaintiff has continued to articulate her case quite well without an attorney and has not alerted the Court to any other basis for appointment, the Court declines to appoint counsel for Plaintiff at trial.

G.      MCPA Claims

Plaintiff contends that the Court failed to consider that violations of the MCDCA automatically constitute unfair and deceptive trade practices that violate the MCPA.  In fact, the Court did note in its opinion that MCDCA violations would be relevant to Plaintiff's MCPA

claims, and it dismissed Plaintiff's MCPA claims after finding that Plaintiff's MCDCA claims

failed and other portions of the MCPA did not support any bases for relief.  The Court affirms its

prior holding.  Although the Court has now found that Plaintiff is entitled to relief under the

MCDCA and the MCPA based on Defendants' violation of the MCALA for collecting debts

without a license, the Court reached this end not by reconsidering any of Plaintiff's MCDCA or

MCPA claims but by construing Plaintiff's MCALA claim as a claim under the MCDCA.


     H.     <u>Vicarious Liability</u>

Finally, Plaintiff challenges the Court's holding that the homeowner association is not

vicariously liable for the actions of its attorneys, Andrews Law Group.  The Court found that

Andrews Law Group was an independent contractor of the homeowner association and that no

exceptions applied to the general rule that an employer is not liable for the acts of its independent

contractor.  Although Plaintiff acknowledges that Andrews Law Group is an independent

contractor rather than an employee of the homeowner association, she contends that the

homeowner association is liable under agency theory as the principal of Andrews Law Group.

Although a client is generally not held vicariously liable for the actions of its attorneys,

liability has been imputed where an attorney commits FDCPA violations on behalf of its client.

By way of background, the FDCPA originally excluded from the definition of "debt collector"

any attorney collecting debts on behalf of its client, *see* 15 U.S.C. § 1692a(6)(F) (repealed 1986),

but Congress later repealed that provision based on concerns that the attorney exemption might

be used by clients to evade compliance with the Act.  H. Rep. No. 405, 99th Cong., 1st Sess. 1-2

(1985), *reprinted in* 1986 U.S.C.C.A.N. 1752, 1752.  Given these concerns, courts closely

scrutinize situations in which an attorney commits FDCPA violations on behalf of a client.

Despite a dearth of case law on this issue within the Fourth Circuit, the Court was guided by the decisions of several other circuit courts.  In *Fox v. Citicorp Credit Services, Inc.*, the Ninth Circuit held a debt collector vicariously liable for the FDCPA violations of its attorney.  15 F.3d 1507, 1516 (9th Cir. 1994).  The Court reasoned that liability should be imputed to the client, a debt collector subject to the FDCPA itself, since the attorney had violated the FDCPA provision on the client's behalf.  The Court found that it would be improper for a debt collector to evade liability under the FDCPA by hiring an attorney to commit violations on its behalf, especially given Congress' demonstrated concern that attorneys would be used to evade liability under the Act.

Two years later, in *Wadlington v. Credit Acceptance Corp.*, the Sixth Circuit interpreted the *Fox* decision to mean that clients may be held vicariously liable for the debt collection activities of their attorneys only when the client itself qualifies as a debt collector under the FDCPA.  76 F.3d 103, 108 (6th Cir. 1996).  The Sixth Circuit reasoned that "[w]e do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is *not* a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector.'" *Id.*  The Third Circuit has since adopted this view as well.  *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000).

Although the Fourth Circuit and Supreme Court have not yet weighed in on this issue, the Court finds the reasoning of the Third and Sixth Circuits to be highly persuasive.  A debt collector should not be able to hire an attorney to engage in illegal debt collection practices on its behalf as a means of avoiding liability under the FDCPA.  On the other hand, if the client is not a debt collector subject to liability under the FDCPA itself, then its decision to hire an attorney to

engage in debt collection practices on its behalf would not be predicated on evading FDCPA liability, and imputing liability under those circumstances would not further the interests of the Act.  Here, the client is a homeowner association that is clearly not a debt collector under the FDCPA because it not a third party attempting to collect a debt but is instead the primary creditor to whom Plaintiff owed the debt.  *See* 15 U.S.C. § 1692a(6).  As a result, the homeowner association is not subject to FDCPA liability, and it would be improper to hold it vicariously liable for the alleged FDCPA violations of its attorneys.

Additionally, Plaintiff contends that the Court erred in finding that the homeowner association not liable for its attorneys' violation of the MCDCA, § 14–202(8).  Section 14–202(8) of the MCDCA provides that "[i]n collecting or attempting to collect an alleged debt a collector may not … [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]"  Md. Code Ann., Com. Law § 14–202(8).  Plaintiff contends that Andrews Law Group violated § 14–202(8) by filing liens and filing a lawsuit against her to collect the homeowner assessment, and that liability may be imputed to the homeowner association as the principal of Andrews Law Group.

The Court's own survey of Maryland law suggests that Maryland has not specifically addressed whether a client may be held liable for the MCDCA violations of its attorneys under agency theory.  It is generally accepted, however, that the client-attorney relationship is one of principal and agent.  A principal is liable for the actions of an agent that are within the scope of the principal's apparent, as well as actual, authority.  *Am. Soc. of Mech. Eng'rs. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982).

Even if the homeowner association would otherwise be liable under respondeat superior for the actions of Andrews Law Group, Plaintiff has not established as a preliminary matter that

Andrews Law Group violated §14–202(8) by attempting "to enforce a right with knowledge that the right does not exist... [.]"  Md. Code Ann., Com. Law § 14–202(8).  The Court understands that Andrews Law Group brought suit against Plaintiff to collect on the debt owed to the homeowner association and also filed a lien against Plaintiff's property and against Plaintiff individually.  For one thing, Plaintiff has not alleged or shown that Andrews Law Group, a lawyer collecting a debt for a client, is subject to the MCALA. *See* Md.Code Ann., Bus. Reg. § 7–102(9).  For another, as discussed above, § 14–202(8) does not support a right to contest the validity of the underlying debt, but only the methods used to collect the alleged debt.  Bringing a lawsuit to enforce the alleged debt is certainly not an improper debt collection method, since a legal action is meant to resolve issues surrounding the debt in a proper, impartial manner rather than through threats or coercion.

Additionally, as discussed above, it appears that there was a legitimate question as to when the limitations period began to run on the collection action against Plaintiff, and thus Andrews Law Group is not liable under § 14–202(8) for bringing what turned out to be time-barred claims.  Finally, the Court must consider whether Andrews Law Group may be liable under § 14–202(8) for its foreclosure and lawsuit threats.  Shortly before filing suit against Plaintiff in the District Court for Montgomery County, Andrews Law Group sent Plaintiff a letter warning her about the forthcoming suit and potential foreclosure on her home.  *See* Doc. No. 84 Ex. 9.  Plaintiff argues that Andrews Law Group had no legal right to take these actions, but her contention is belied by the Maryland Condominium Act ("MCA"), which provides in relevant part that:

> (d)(1) Payment of assessments, together with interest, late charges, if any, costs of collection and reasonable attorney's fees may be enforced by the imposition of a lien on a unit in accordance with the provisions of the Maryland Contract Lien Act.

     (2) Suit for any deficiency following foreclosure may be maintained in the same
     proceeding, and suit to recover any money judgment for unpaid assessments may
     also be maintained in the same proceeding, without waiving the right to seek to
     impose a lien under the Maryland Contract Lien Act.

Md.Code Ann. Real Prop., §11-110(d).  Andrews Law Group was hired on behalf of the

homeowner association, who has rights under the MCA to collect debts through the filing of

lawsuits, the imposition of liens, and foreclosure.  Accordingly, Andrews Law Group had a right

to actually take such actions on behalf of its client the homeowner association, and thus it cannot

be said that Andrews Law Group threatened to enforce a right that did not exist.

     Moreover, even if Andrews Law Group in fact lacked the authority to send the warning

letter, record the liens or file suit against Plaintiff, for the reasons discussed above it appears

Andrews Law Group had a reasonable basis for believing such actions were proper and thus

lacked the actual knowledge or reckless disregard necessary for a finding of liability under the

MCDCA.  Given that Andrews Law Group is not subject to liability under the MCDCA, and

because liability cannot otherwise be imputed from Andrews Law Group to its client, Plaintiff's

attempt to impute liability under a respondeat superior or vicarious liability theory fails.


I.    <u>Motion to Strike</u>

     Also before the Court is Defendant Hassett's Motion to Strike Plaintiff's letter alleging

acts of perjury committed by Hassett.  Doc. No. 100.  Plaintiff's letter contends that Hassett

committed perjury because, essentially, his statement of certain facts conflicts with Plaintiff's

understanding of those facts.  Factual disputes are common in litigation, and it is not the province

of the Court to make such credibility determinations.  Plaintiff has not substantiated any

contention that Defendant willfully provided false testimony, but even if she had, it is beyond the

Court's purview in this civil matter to provide relief under criminal statutes. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."). As a result, the Court grants Defendant's Motion to Strike.

      J.      <u>Defendants' Motion for Attorneys' Fees and Costs and Plaintiff's Motion to Strike Defendants' Motion</u>

Defendants seek attorneys' fees and costs of $51,231.36 based on the Court's prior Judgment finding in favor of Defendants on all counts. Defendants contend that Plaintiff has assuaged the Court with "voluminous filings," "rambling" and "legally inaccurate" arguments, and "a massive amount of exhibits which did absolutely nothing to advance her cause." While the Court agrees with the foregoing assessment by Defendants, it has also found Defendants' legal arguments to be largely unhelpful and at times incomplete. Given that the Court has subsequently found liability against Defendants under the MCDCA and MCPA and will be reopening this matter to resolve the issue of damages, the Court denies Defendants' motion without prejudice. Defendants may raise their motion once again at the close of proceedings if they wish.

In response to Defendants' Motion for Attorneys' Fees and Costs, Plaintiff filed a motion to strike Defendants' motion, pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) states that "[U]pon ... motion made by a party within 20 days after the service of the pleading upon the party..., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court finds Plaintiff's motion frivolous because it responds in substance to Defendants' motion rather than addressing the grounds upon which a motion to strike may be granted. Additionally, a motion for attorneys'

fees is not a pleading subject to a Rule 12(f) motion to strike.  *See* Fed. R. Civ. P. 7

(distinguishing pleadings from motions and other papers).  Plaintiff effectively filed two

responses to Defendants' Motion for Attorneys' Fees, one being under the guise of a motion to

strike.  The Court cautions Plaintiff that such tactics will be closely scrutinized in any subsequent

filings. Accordingly, Plaintiff's motion to strike is denied.


**IV.**     **Conclusion**

     For the foregoing reasons, Plaintiff's Motion to Alter or Amend will be granted-in-part

and denied-in-part, Defendant Hassett's Motion to Strike will be granted, Defendants' Motion

for Attorneys' Fees and Costs will be denied without prejudice, Plaintiff's Motion to Strike will

be denied, and this case will be reopened for further proceedings with respect to damages.

     For purposes of clarity, the Court directs that Defendant Norbeck Grove is dismissed

from this action.  The only claims remaining are Plaintiff's claims under the MCDCA and

MCPA against Defendants Hassett, Gatling,[4] and TMG based on their unlicensed attempts to

collect Plaintiff's debt.  The statute of limitations under both the MCDCA and the MCPA is

three years.  *See* Md.Code Ann., Courts and Judicial Proceedings Art., § 5–101.  As such,

Plaintiff is limited to seeking damages based only on acts by Defendants that occurred after June

6, 2007.  Plaintiff will also need to prove that the harm she experienced was proximately caused

by Defendants' violations.  *See* Md.Code, Com. Law, § 14–203.  The Court will schedule a one-

day jury trial to determine what damages, if any, Plaintiff can prove.  A separate order will

---

[4]At no point during this litigation have Defendants Hassett or Gatling argued that they should not be held liable for
debt collection actions taken as employees or agents of TMG.

follow memorializing these decisions.

June 28, 2012                                                           /s/
       Date                                        Alexander Williams, Jr.
                                         United States District Judge